**Part III - Statement of Claims (Exhibit A)**

All events occurred while Plaintiff was employed by Frost Bank unless otherwise noted.

**Background and Protected Status**

1. Plaintiff Saul Santos, Jr. began working at Frost Bank as a Customer Service Specialist on October 23, 2019.

2. Plaintiff is Hispanic and of Mexican descent.

3. Plaintiff was over 40 years old throughout his employment.

4. Plaintiff consistently met performance expectations and was qualified for his role.

**Early Hostile Work Environment and Discrimination**

**(2019–2021)**

5. In November 2019, Assistant VP Jeffrey Jordan conducted training in a hostile, aggressive manner, singling out Plaintiff and creating an uncomfortable environment.

6. Between February and March 2020, Mr. Jordan interrupted a conversation between Plaintiff and another Hispanic employee with anger and hostility, implying ethnic bias and contributing to a racially hostile work environment.

7. On April 21–22, 2020, Mr. Jordan repeatedly demanded Plaintiff share his computer screen remotely without valid reason, which Plaintiff perceived as invasive and harassing.

8. On June 9, 2020, Mr. Jordan pressured Plaintiff unprofessionally over equipment issues. Plaintiff reported this to VP Cathy Pais on June 9 and 17, 2020, but no action was taken.

9. On June 3, 2021, Plaintiff requested required professional training but was excluded and denied access to growth opportunities.

10. On July 10, 2021, Plaintiff requested a reasonable accommodation from Senior VP Bryan Carter for flexibility to care for his newborn child; the request was ignored.

11. On September 16, 2021, Plaintiff escalated accommodation concerns to Human Resources after no response from Senior VP Carter; Frost Bank failed to engage in the required interactive process.

12. In November 2021, Plaintiff received public praise from Frost's Marketing Department recognizing his performance.

## Escalating Discrimination and Retaliation

## (2022–2023)

13. On September 7, 2022, shortly after Plaintiff raised internal complaints, VP Pais falsely accused him of taking an extended break, indicating retaliatory discipline.

14. From 2019 to 2022, Plaintiff applied for over 15 promotions but was never selected. On September 22, 2022, VP Pais told Plaintiff he needed to "improve his English," despite Plaintiff's fluency—a discriminatory comment reflecting bias based on national origin.

15. On February 6, 2023, Plaintiff reported ongoing complaints from Spanish-speaking customers about unanswered calls; upper management ignored the issue, and Plaintiff personally assisted these customers.

16. From February to July 2023, Plaintiff attended at least 14 disciplinary meetings for false or exaggerated performance issues, causing significant emotional distress, including crying and anxiety.

17. On April 6, 2023, Plaintiff's request to attend his daughter's school ceremony was denied and he received a verbal warning the same day.

18. On April 7, 2023, after persistent communication, Senior VP Carter approved only four hours of leave for Plaintiff's legitimate family need.

19. On April 28, 2023, Plaintiff was disciplined for a "validation error" he asserts he did not commit, following established processes.

20. On May 11, 2023, Plaintiff was denied a raise for alleged attendance issues, while employees with similar or worse attendance received raises, indicating disparate treatment.

21. On May 19 and June 2, 2023, Plaintiff was summoned to coaching sessions shortly after internal complaints, suggesting retaliation.

22. On June 8, 2023, Plaintiff received a written warning and notice of a pending Performance Improvement Plan (PIP).

23. On June 16, 2023, Plaintiff was disciplined despite following company policy, reinforcing a pattern of disparate and retaliatory treatment.

24. On June 16, 2023, Officer Barrera required Plaintiff to return to in-office work while non-complaining colleagues continued remote work; Plaintiff was the only employee required to report in person.

25. On June 21, 2023, Plaintiff filed a formal internal complaint with HR detailing multiple incidents of discrimination and retaliation.

26. On June 23, 2023, Plaintiff received a written warning for an approved absence, suggesting retaliation.

27. On July 24, 2023, VP Cathy Pais praised Plaintiff for speaking up, admitting he was right about the confusion caused by upper management and that they hadn't realized the harm they were creating.

28. On July 20, 2023, Plaintiff filed a formal charge of discrimination with the Texas Workforce Commission.

29. Later that same day, July 24, 2023—just hours after VP Pais admitted Plaintiff was right—Assistant Vice President Jeffrey Jordan sent Plaintiff a punitive "mentorship" email imposing demeaning "rules of engagement," such as "don't talk and explain how right you were, don't blame, don't excuse." The message was not about support—it was about silencing. Coming immediately after management acknowledged Plaintiff's concerns were valid, this email exposed the bank's retaliatory intent and sent a clear warning: speak up, and you'll be punished.

30. On July 24, 2023, HR Officer Nicole Turner falsely claimed prior complaints had been resolved without proper investigation.

31. On August 8, 2023, former President Pat Frost questioned Plaintiff about his religion and immigration status of his church members, which Plaintiff found discriminatory and inappropriate.

32. On August 14, 2023, HR Representative Elly Ciaschetti ordered Plaintiff to close his personal business and transferred him to a Treasury Management department without training, disrupting his work.

### FMLA Interference, Disability Discrimination, and Termination

### (Late 2023 – Early 2024)

33. On November 28, 2023, Plaintiff requested medical leave from Manager Justin King; the request was initially denied and later partially approved.

34. On November 29, 2023, during a meeting about a Teams chat message, Senior VP Soriano raised her hands at Plaintiff while crying, yelling, and belittling him, using stigmatizing language about his mental health.

35. Plaintiff filed a complaint to HR following this treatment; no action was taken.

36. On December 6, 2023, Plaintiff disclosed his mental health condition to Employee Relations Specialist Katie Richardson and requested accommodations.

37. On December 6, 2023, Plaintiff received formal notice confirming eligibility for FMLA leave due to his serious health condition, with certification due December 21, 2023. Plaintiff complied with deadlines.

38. HR instructed Plaintiff to treat his leave as FMLA-protected and set a December 21, 2023, paperwork deadline.

39. Plaintiff notified supervisors he would be on leave through January 7, 2024.

40. On January 17, 2024, Plaintiff received another FMLA eligibility notice for his wife's health condition, with certification due February 1, 2024; Plaintiff complied fully.

41. On January 22, 2024, Katie Richardson confirmed Plaintiff's leave was designated FMLA-protected.

42. Later on January 22, 2024, Plaintiff was abruptly terminated in an unannounced meeting, without prior warning.

43. The Texas Workforce Commission later found Plaintiff's termination was due to a medically verifiable illness.

### Post-Termination Retaliation and Cover-Up

### (2024)

44. In June 2024, Plaintiff requested reinstatement; Frost Bank did not respond.

45. In July 2024, HR Officer Nicole Turner falsely claimed Plaintiff was terminated for performance issues and that no FMLA paperwork existed.

46. Frost Bank's own FMLA Manager, Trentin Rosipal, later confirmed that Plaintiff's FMLA file was mishandled due to internal HR mismanagement—an admission that directly supports Plaintiff's claims of FMLA interference and retaliation.

## CLAIMS FOR RELIEF

### First Claim: Age Discrimination in Violation of the Age Discrimination in Employment Act (ADEA)

47. Plaintiff was subjected to adverse treatment because of his age, including denial of promotions and increased scrutiny, culminating in termination. These actions violated the ADEA. Plaintiff incorporates by reference Paragraphs 3, 4, 10, 11, 14, 20, and 23 of the Factual Allegations. These facts show that Plaintiff was over 40, met performance expectations, and was passed over for promotions and training opportunities given to younger, less experienced employees. Plaintiff was subjected to increased scrutiny and ultimately terminated, suggesting age was a motivating factor.

### Second Claim: Race and National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964

48. Plaintiff experienced discrimination and retaliation based on his Hispanic ethnicity and Mexican national origin. Plaintiff incorporates by reference Paragraphs 2, 5–9, 14–16, 24–32, and 34 of the Factual Allegations. These facts demonstrate discriminatory remarks, exclusion from promotions, denial of support, and differential discipline. Plaintiff was further retaliated against after reporting these conditions.

### Third Claim: Religious Discrimination in Violation of Title VII of the Civil Rights Act of 1964

49. Defendants subjected Plaintiff to discriminatory treatment based on his religion, including intrusive questioning and adverse employment actions. Plaintiff incorporates by reference Paragraphs 31 and 32 of the Factual Allegations.

### Fourth Claim: Disability Discrimination in Violation of the Americans with Disabilities Act (ADA)

50. Plaintiff disclosed a mental health condition and requested reasonable accommodations, but Defendants failed to engage in the interactive process, instead ridiculing and ultimately terminating Plaintiff. Plaintiff incorporates by reference Paragraphs 33–43 of the Factual Allegations.

**Fifth Claim: Interference and Retaliation in Violation of the Family and Medical Leave Act (FMLA)**

51. Plaintiff was eligible for FMLA leave, provided timely notice, and complied with all requirements. Defendants interfered with Plaintiff's rights by terminating him during protected leave and making false performance claims. Plaintiff incorporates by reference Paragraphs 33–46 of the Factual Allegations.

**Sixth Claim: Race and National Origin Discrimination and Retaliation in Violation of 42 U.S.C. § 1981**

52. Plaintiff was denied equal employment opportunities and subjected to a hostile environment and retaliation based on his ethnicity. Plaintiff incorporates by reference Paragraphs 2, 5–9, 14–16, 24–32, and 34 of the Factual Allegations.

**Seventh Claim: Age Discrimination in Violation of the Texas Commission on Human Rights Act (TCHRA)**

53. Plaintiff was discriminated against because of his age, including denial of promotions and termination, in violation of the TCHRA. Plaintiff incorporates by reference Paragraphs 3, 4, 10, 11, 14, 20, and 23.

**Eighth Claim: Race and National Origin Discrimination in Violation of the TCHRA**

54. Plaintiff faced discrimination and retaliation based on his ethnicity, including exclusion and denial of advancement. Plaintiff incorporates by reference Paragraphs 2, 5–9, 14–16, 24–32, and 34.

**Ninth Claim: Religious Discrimination in Violation of the TCHRA**

55. Plaintiff was subjected to inappropriate religious inquiries and adverse employment actions in violation of the TCHRA. Plaintiff incorporates by reference Paragraphs 31 and 32.

**Tenth Claim: Disability Discrimination in Violation of the TCHRA**

56. Defendants failed to accommodate Plaintiff's disability and terminated him in violation of Texas law. Plaintiff incorporates by reference Paragraphs 33–43.

**Eleventh Claim: Retaliation in Violation of the TCHRA**

57. Plaintiff engaged in protected activity by complaining about discrimination and FMLA use. Defendants retaliated by escalating discipline, excluding Plaintiff from opportunities, and terminating his employment. Plaintiff incorporates by reference Paragraphs 9, 13, 15–18, 20–23, 25–30, 35, and 41–46.

**Twelfth Claim: Systemic Discrimination and Retaliation — Pattern and Practice Violations (Title VII, § 1981, & TCHRA)**

58. The timeline demonstrates a widespread, coordinated pattern of discrimination and retaliation against Plaintiff based on age, race, national origin, religion, disability, and protected activity. Multiple senior officials participated, reflecting institutional bias warranting punitive and injunctive relief. Plaintiff incorporates all preceding paragraphs.